2026 IL App (2d) 250025
No. 2-25-0025
Opinion filed February 9, 2026

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant,
v. RUBEN A. MUNOZ, Defendant-Appellee.

Appeal from the Circuit Court of Kane County.
Honorable John A. Barsanti, Judge, Presiding.
No. 24-CF-662

PRESIDING JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Justices Jorgensen and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals from an order of the circuit court of Kane County granting the motion of defendant, Ruben Munoz, to dismiss certain charges as barred under double jeopardy principles by his earlier guilty plea in separate proceedings initiated by the Village of Carpentersville (Village). We affirm the dismissal.

¶ 2                                I. BACKGROUND

¶ 3    On March 31, 2024, at 5 a.m., defendant was allegedly found "slumped over the steering wheel" in a parked motor vehicle on Route 68 in the Village. A Village police officer observed that defendant had an odor of alcohol and bloodshot, glassy eyes, but wrote that defendant refused field sobriety tests and, later, refused to submit to a breathalyzer. The officer arrested defendant and issued tickets for four traffic offenses. The record shows that the same four tickets were used in two separate cases: a misdemeanor case (with a DT number) and a felony case (with a CF number).

For unknown reasons, the cases thereafter proceeded separately in different courtrooms, the lawyers in each case apparently unaware of the existence of the other case.

¶ 4    The DT file from Kane County case No. 2024-DT-272 reflects the following. A form "Illinois citation and complaint" number 004055973 listed "DUI – Alcohol – 1st or 2nd Offense" and charged defendant with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2022)), a Class A misdemeanor (*id.* § 11-501(c)(1)). The citation included a handwritten case number of "2024 DT 272" at the top, under which was written "CT1," in what appears to be the same handwriting, indicating it was count I. The second citation, number 004055974, listed the same handwritten case number with "CT2" written below and charged defendant with driving while license revoked (DWLR) (*id.* § 6-303(a)), a Class A misdemeanor. The third count, citation 004055975, charged defendant with illegally stopping, standing, or parking where prohibited (*id.* § 11-1303). The fourth count, citation 00405976, was for operating an uninsured motor vehicle (*id.* § 3-707(a)). At the bottom of all four citations was listed a required court appearance date on April 24, 2024, in courtroom 203 at the Kane County Judicial Center in St. Charles.

¶ 5    Because defendant allegedly had a suspension or revocation for a prior DUI and/or did not possess a license on March 31, 2024, the Kane County State's Attorney's Office approved felony charges. The CF file from Kane County case No. 2024-CF-662 contains the same four citations with the same citation numbers, but with "24Cf662" written as the case number on each, with different count numbers written below. Thus, a copy of the same ticket charging defendant with misdemeanor DUI (004055973) was placed in the felony file, although, curiously, this citation listed "ct6," under the CF number (all in apparently the same handwriting). The next three citations are the same as the ones in the DT file except for the case number "24Cf662," under which are counts VII, VIII, and IX. There is no count V among the initial citations.

¶ 6     Also on March 31, 2024, the State filed a five-count complaint in 2024-CF-662, charging defendant with the following: (1) DWLR—"DUI/SSS—Second Offense" (*id.* § 6-303(a)), a Class 4 felony; (2) aggravated DUI—"License Suspended or Revoked" (*id.* § 11-501(a)), a Class 4 felony; (3) aggravated DUI—"No Drivers License" (*id.* § 11-501(a)), a Class 4 felony; (4) obstructing a peace officer (720 ILCS 5/31-1(a)(2) (West 2022)), a Class A misdemeanor; and (5) resisting a peace officer (*id.* § 31-1(a)(1)), also a Class A misdemeanor. The felony DUI and DWLR charges were based on the same March 31, 2024, incident giving rise to the misdemeanor DUI and DWLR charges in case No. 2024-DT-272. The "New Case Information Sheet" in the file, prepared by the arresting officer and listing by name an "authorizing ASA," lists the traffic citation numbers under "The following ORIGINAL traffic citations will accompany this criminal complaint (Please list the citation numbers)." The felony case was assigned to Judge Barsanti in courtroom 319, also at the Kane County Judicial Center in St. Charles. Also that day, defendant appeared before a judge for an initial appearance in case No. 2024-CF-662, at which time the public defender was appointed to represent defendant for all proceedings in the case, various release conditions were set, and the case was set for status on April 3, 2024, in courtroom 319.

¶ 7     The felony and misdemeanor cases then proceeded on parallel tracks in the two different courtrooms.

¶ 8     On April 3, 2024, defendant appeared in courtroom 319 on the felony case with his attorney, Assistant Public Defender (APD) Seth McClure. The case was continued by agreement and set for preliminary hearing on May 21, 2024.

¶ 9     On April 24, 2024, defendant's first status hearing in the misdemeanor case was held via Zoom in courtroom 203. Appearing for the prosecution was the Village prosecutor. No attorney

appeared for defendant. The order from that date indicates that defendant was not present but also indicates that the case was continued "by agreement" to May 16, 2024.[1]

¶ 10 On May 16, 2024, defendant appeared in the misdemeanor/traffic courtroom 203 and was ordered to "[r]eturn with an attorney" on July 11, 2024.

¶ 11 Meanwhile, on May 17, 2024, back in felony courtroom 319, defendant's attorney, APD McClure, appeared, defendant's presence was waived, and the case was set over for "Final setting of Preliminary hearing" on June 26, 2024.

¶ 12 Then, on June 18, 2024, a Kane County grand jury returned a seven-count indictment under 2024-CF-662, superseding the original felony charges and adding counts as follows: (1) aggravated DUI (625 ILCS 5/11-501(a)(2) (West 2022)), a Class 4 felony (*id.* § 11-501(d)(2)(A)); (2) aggravated DUI (*id.* § 11-501(a)(2)), a Class 4 felony (*id.* § 11-501(d)(2)(A)); (3) DWLR (*id.* § 6-303(a)), a Class 4 felony (*id.* § 6-303(d)); (4) obstructing a peace officer (720 ILCS 5/31-1(a)(2) (West 2022)), a Class A misdemeanor; (5) resisting a peace officer (*id.* § 31-1(a)(1)), a Class A misdemeanor; (6) DUI (625 ILCS 5/11-501(a)(2) (West 2022)), a Class A misdemeanor (*id.* § 11-501(c)(1)); and (7) DWLR (*id.* § 6-303(a)), a Class A misdemeanor.[2] The felony DUI and DWLR charges were based on the same incident giving rise to the misdemeanor DUI and DWLR charges in case No. 2024-DT-272. The order reflecting the entry of the indictment, dated June 20, 2024, kept defendant's bond to stand "as previously ordered" and the

---

[1]This was also the effective date of summary suspension noticed by the Secretary of State on its Statutory Summary Suspension form, filed with the circuit clerk on April 17, 2024.

[2]This count states that "defendant must serve a minimum of 10 days imprisonment or 240 hours of community service if sentenced to probation or conditional discharge."

case set for arraignment before Judge Barsanti on the previously scheduled status date of June 26, 2024.

¶ 13　On June 26, 2024, defendant appeared before Judge Barsanti in courtroom 319 via Zoom, with his attorney, APD McClure. The felony case was set for completion of discovery on August 14, 2024, at which time defendant's presence would be waived.

¶ 14　On July 11, 2024, back in courtroom 203 on the DT case, defendant appeared in open court without counsel. By agreement with the Village prosecutor, the case was set for status on August 29, 2024. For unknown reasons, defendant appeared in court again on July 25, 2024, at which time Judge Cruz appointed the public defender. Defendant was thereafter represented in the DT case by Kane County APD Claudia Kliment. The case was again set for status on August 29, 2024.

¶ 15　On August 14, 2024,[3] defendant appeared in courtroom 319 via Zoom, represented by APD McClure, and the felony case was set for status of discovery on September 12, 2024.

¶ 16　On August 29, 2024, back in courtroom 203, defendant appeared and entered a negotiated plea of guilty to misdemeanor DUI in case No. 2024-DT-272. APD Kliment and the Village prosecutor were present at the plea hearing, and defendant appeared via Zoom. In exchange for defendant's plea of guilty to count I, misdemeanor DUI, the Village agreed to dismiss the misdemeanor DWLR and the two traffic charges. Judge Cruz admonished defendant and confirmed his knowing waiver of his right to trial, heard the stipulated factual basis for the plea, and accepted defendant's plea of guilty. Per the negotiated plea agreement, the trial court entered judgment on the DUI, dismissed the other charges, and sentenced defendant to 18 months'

_____

[3]Two days earlier, a report of non-compliance with pretrial conditions was filed in the CF case, indicating that defendant had been arrested for misdemeanor DWLR on July 5, 2024, in Pingree Grove, Kane County.

conditional discharge, 240 hours of public service, a fine of $1,000, restitution to Carpentersville Police Department of $434, and additional fees and costs.

¶ 17    On September 12, 2024, defendant appeared in courtroom 319 via Zoom, represented by another APD instead of APD McClure. The case was continued for plea to October 2, 2024.

¶ 18    On September 25, 2024, APD McClure filed a motion on defendant's behalf to dismiss the indictment in 2024-CF-662. The motion contended that, given defendant's guilty plea to misdemeanor DUI in 2024-DT-272, further prosecution would violate the constitutional prohibition against double jeopardy. See U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 10. The State did not file a written response to the motion.

¶ 19    On October 2, 2024, the parties argued the motion before Judge Barsanti. APD McClure stated that he was not privy to the misdemeanor negotiations in the DT case, but he now inferred that the imposition of 240 hours of public service was a typical sentence for a DWLR and reflected consideration of that charge in addition to the DUI. Given that and the dismissal of all three charges other than DUI, the defense argued that the felony DUI and all other charges in the felony case should be dismissed. The State argued that defendant's guilty plea did not bar further prosecution, citing *People v. Staple*, 2016 IL App (4th) 160061.

¶ 20    On October 4, 2024, Judge Barsanti granted the defense motion and dismissed counts I, II, and VI (the charges of DUI and aggravated DUI), leaving counts III, IV, V, and VII pending (misdemeanor and felony DWLR, misdemeanor obstructing, and misdemeanor resisting); the court granted the defense an opportunity to file a separate motion covering the DWLR. On January 8, 2025, the State nol-prossed the DWLR counts, III and VII, obviating the defense's motion. The State then argued its motion to reconsider the court's dismissal of the DUI counts, again citing *Staple* and adding that defendant "knew very well that this case arose out of the same incident as

the case he pled guilty to," and noting that the "Public Defender's Office" represented defendant in both cases.

¶ 21 On January 15, 2025, Judge Barsanti denied the State's motion to reconsider, leaving only counts IV and V remaining. The following day, the State filed a certificate of impairment and a notice of appeal under Illinois Supreme Court Rule 604(a)(1) (eff. Apr. 15, 2024).

¶ 22                                        II. ANALYSIS

¶ 23 On appeal, the State argues that the trial court was "without authority" to dismiss the felony DUI counts on double jeopardy grounds. More specifically, the State avers that the trial court erred when it "ignored controlling precedent" in "disregarding" *Staple*, 2016 IL App (4th) 160061. Defendant argues that *Staple* is not binding and was wrongly decided.

¶ 24 "Where, as here, neither the facts nor witnesses' credibility are at issue, we review *de novo* a trial court's ruling on a motion to dismiss charges on double jeopardy grounds." *People v. Kotlarchik*, 2022 IL App (2d) 200358, ¶ 10.

¶ 25 The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. The protection afforded by the double jeopardy clause applies in state criminal proceedings by virtue of the fourteenth amendment's due process guarantee. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Illinois Constitution of 1970 also protects those accused of crimes from double jeopardy. Ill. Const. 1970, art. I, § 10. The Illinois double jeopardy clause is construed in the same manner as the federal clause. *In re P.S.*, 175 Ill. 2d 79, 91 (1997).

¶ 26 The federal clause confers "three separate constitutional protections." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). It protects against (1) "a second prosecution for the same offense after acquittal," (2) "a

second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *Id.* The fifth amendment forbids successive prosecution and cumulative punishment for both a greater and lesser-included offense, "[w]hatever the sequence may be." *Brown v. Ohio*, 432 U.S. 161, 169 (1977). This case implicates the second category of constitutional protections against double jeopardy, as the State seeks to continue prosecuting the felony DUI case after the plea of guilty to the misdemeanor DUI.

¶ 27    In determining whether multiple prosecutions implicate the double jeopardy clause, we must first determine whether the prosecutions are for the same offense. When one offense is a lesser-included offense of another, they are, for double jeopardy purposes, considered the same offense. See *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). "[T]he prosecution of a lesser-included offense prevents a subsequent prosecution on the greater offense since, by definition, a lesser-included offense requires no proof beyond what is required for the greater offense." *People v. Sienkiewicz*, 208 Ill. 2d 1, 6 (2003) (citing *Brown*, 432 U.S. at 167-69). There is no dispute that both charges here arise from the same act and all the elements necessary to prove misdemeanor DUI are included among the elements necessary to prove felony DUI.

¶ 28    Next, it is also undisputed that jeopardy attached when the trial court accepted defendant's plea of guilty to the misdemeanor DUI charge. When a criminal defendant pleads guilty to an offense, jeopardy attaches when the trial court accepts the plea. *People v. Hull*, 2020 IL App (3d) 190544, ¶ 7; *People v. Bellmyer*, 199 Ill. 2d 529, 538 (2002). When defendant pleaded guilty to

misdemeanor DUI, he admitted to all the elements needed to prove felony DUI, with the exception of proofs as to defendant's license status at the time of the offense.

¶ 29    However, there are several recognized exceptions to the general rule prohibiting successive prosecutions for a greater and lesser-included offense. The first is "when all the events necessary to the greater crime have not taken place at the time the prosecution for the lesser is begun." *Jeffers v. United States*, 432 U.S. 137, 151 (1977). A second, similar exception is when facts necessary to the greater offense were not discovered, despite the exercise of due diligence, before the trial on the lesser offense. *Id.* at 152. A third is where "the defendant expressly asks for separate trials on the greater and the lesser offenses" or opposes trying the cases together while failing "to raise the issue that one offense might be a lesser included offense of the other." *Id.* The fourth exception, stated in *Ohio v. Johnson*, 467 U.S. 493 (1984), occurs when a defendant unilaterally deprives the State of its interest in completing its prosecution through the offensive use of the double jeopardy clause, either over the State's objection or otherwise through the use of "procedural wangling to unilaterally deprive 'the State its right to one full and fair opportunity to convict those who have violated its laws.' " *State v. Fox*, No. 13-1429, 2014 WL 5243365, at *2 (Iowa Ct. App. Oct. 15, 2014) (quoting *Johnson*, 467 U.S. at 502). This fourth exception is at issue here.

¶ 30    Before considering the impact of *Johnson* on defendant's double jeopardy claim, we note that the State initially attempts to frame the issue in this appeal narrowly: did the trial court err by failing to recognize that it was bound by *Staple*, 2016 IL App (4th) 160061, which, though issued by another district, has never been contradicted (so the State claims) by a decision from this district? With the question thus framed, we would have no occasion to consider the merits of defendant's successful double jeopardy challenge; we would effectively be bound by the Fourth District's decision. However, it is well established that decisions from other districts are not

binding on this court. *People v. Cooper*, 2024 IL App (2d) 220158, ¶ 71. The State cannot limit the scope of our review by invoking limitations on the trial court's authority to depart from precedent in other districts.

¶ 31 Accordingly, we turn our attention to whether the dismissal of the DUI and aggravated DUI charges in the felony case here ran afoul of *Johnson*. In that case, the defendant was indicted on a single count each of murder, involuntary manslaughter, aggravated robbery, and grand theft—all in connection with the shooting death of Thomas Hill. *Ohio v. Johnson*, 467 U.S. at 494-95. Over the State's objection, the trial court (1) accepted the defendant's pleas of guilty to involuntary manslaughter and grand theft and (2) granted the defendant's motion to dismiss on the basis that involuntary manslaughter and grand theft were lesser included offenses of the remaining charges of murder and aggravated robbery and that, consequently, further prosecution would violate the prohibition against double jeopardy. *Id.* at 496. The Ohio Court of Appeals and the Supreme Court of Ohio affirmed the dismissal (*id.*), but the United States Supreme Court found no double jeopardy bar (*id.* at 502). As relevant here, the *Johnson* Court explained that the prosecution of the murder and aggravated robbery charges would not violate the prohibition of a prosecution for the same offense after a conviction:

> "[The defendant] was indicted on four related charges growing out of a murder and robbery. The grand jury returned a single indictment, and all four charges were embraced within a single prosecution. [The defendant's] argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts

that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now." *Id.* at 500-01.

¶ 32    The *Johnson* Court distinguished its prior decision in *Brown*, in which the defendant, who pleaded guilty to "joyriding" (*i.e.*, operating a vehicle without the owner's consent) and was sentenced for that crime, was later indicted for that offense, and for auto theft, based on the same incident. The *Brown* Court held that the later charges were barred by the double jeopardy clause because joyriding was a lesser included offense of auto theft (*Brown*, 432 U.S. at 167) and the clause "forbids successive prosecution and cumulative punishment for a greater and lesser included offense" (*id.* at 169). In concluding that *Brown* was not controlling, the *Johnson* Court reasoned that in a case like *Johnson*, where "[the defendant] offered only to resolve part of the charges against him, while the State objected to disposing of any of the counts against [the defendant] without a trial," allowing the prosecution to proceed did not implicate any of the interests the double jeopardy clause was designed to protect. *Johnson*, 467 U.S. at 501.

¶ 33    The *Johnson* Court also observed: "[The defendant] has not been exposed to conviction on the charges to which he pleaded not guilty, nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial." *Id.* The Court added:

> "The acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending *** has none of the implications of an 'implied acquittal' which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses. [Citation.] There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. *On the other hand, ending prosecution now would deny the State its right to one full and*

- 11 -

*fair opportunity to convict those who have violated its laws.*" (Emphasis added.) *Id.* at 501-02.

¶ 34 Finally, the Court attached significance to the defendant's role in securing a disposition of some but not all of the charges:

"We think this is an even clearer case than *Jeffers v. United States*, 432 U.S. 137 (1977), where we rejected a defendant's claim of double jeopardy based upon a guilty verdict in the first of two successive prosecutions, when the defendant had been responsible for insisting that there be separate rather than consolidated trials. Here [the defendant's] efforts were directed to separate disposition of counts in the same indictment where no more than one trial of the offenses charged was ever contemplated. Notwithstanding the trial court's acceptance of [the defendant's] guilty pleas, [the defendant] should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." *Id.* at 502.

Although the *Johnson* Court cited several factors in support of its decision that the double jeopardy clause did not bar prosecution of the remaining charges, the most compelling, perhaps, was the defendant's attempt to grab the reins from the State, effectively seizing control of the prosecution to choose what crime he would be convicted of committing.

¶ 35 Notably, unlike this case, *Johnson* involved a prosecution after a conviction of the same offense *in the same proceeding*. In contrast, courts have regularly held that the double jeopardy clause bars prosecution after a conviction for the same offense in a *different proceeding*. In *People v. Brener*, 357 Ill. App. 3d 868, 869 (2005), the defendant, who had been drinking, drove off in his truck, unknowingly running over his sister in the process. That occurred in Jo Daviess County. He continued driving until he reached Winnebago County, where he was arrested for and charged with

DUI. *Id.* at 869-70. On the same day, he was charged by information in Jo Daviess County with aggravated DUI. *Id.* at 870. (He was later indicted in Jo Daviess County for the same offenses.) After pleading guilty to the Winnebago County charges, the defendant successfully moved to dismiss the Jo Daviess County charges. *Id.* We affirmed, reasoning as follows:

> "Counties are not sovereign entities but rather are subordinate governmental instrumentalities. [Citation.] Accordingly, both counties are equally subordinate to the state's double-jeopardy prohibition \*\*\*. Therefore, to allow each county to prosecute multiple offenses carved from the same physical act \*\*\* would be to annihilate the prohibition against double jeopardy." *Id.* at 871-72.

¶ 36    In *Hull*, 2020 IL App (3d) 190544, the Third District reached the same result in a case involving charges of misdemeanor fleeing and eluding in one county and aggravated fleeing and eluding in another, which arose from a single high-speed chase. The *Hull* court specifically rejected the State's argument that, under *Johnson*, the prosecution of the greater offense in one county after the defendant pleaded guilty to the lesser-included offense in the other county did not run afoul of the double jeopardy clause. *Id.* ¶¶ 12-13. The court explained that *Johnson* "involved one prosecuting entity, with one case, charging multiple offenses, unlike, here, where two separate counties sought to charge the defendant with essentially the same offense for the same act." *Id.* ¶ 13; see *State v. Witcher*, 737 So. 2d 584, 586 (Fla. Dist. Ct. App. 1999) (defendant's plea to misdemeanor DUI charge in county court while felony DUI charge was pending in circuit court concluded the case against the defendant, and the double jeopardy principle barred further prosecution of the felony charge).

¶ 37    The same reasoning applies here, although the prosecutions were not undertaken in different counties, but by county and municipal prosecutorial authorities. "[A] municipality cannot

qualify as a sovereign distinct from a State ***." *Commonwealth of Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 71 (2016). Thus, the municipal prosecution was subject to the double jeopardy prohibition applicable to the State. Accord *State v. Bernert*, 2004 UT App 321, ¶ 12, 100 P.3d 221 (after trial court accepted defendant's guilty plea to misdemeanor DUI charge in municipal prosecution, double jeopardy clause barred transfer of case to county prosecutors to pursue felony DUI charges).

¶ 38    In *In re Petition of Blenka*, No. 61294, 2013 WL 3273810 (Nev. May 30, 2013),[4] the Supreme Court of Nevada concluded that *Johnson* did not apply in circumstances much like the present case. The court held that a DUI conviction in a municipal prosecution by a city attorney barred the district attorney from prosecuting the defendant for felony DUI in a county court. The prosecutors and defense attorneys in each case were apparently unaware of the other case. *Id.* at *1, *3-4. The defendant entered into a plea agreement in municipal court, and after the municipal court imposed sentence, the defendant moved to dismiss the county court charge. *Id.* at *1. In holding that the double jeopardy clause barred the county court prosecution, the *Blenka* court distinguished *Johnson* on the basis that, unlike the trial court in *Johnson*, the municipal court did not accept the defendant's guilty plea over the prosecution's objection; rather, he pleaded guilty

---

[4]Blenka is an unpublished disposition and, therefore, is not precedential under Rule 36(c)(2) of the Nevada Rules of Appellate Procedure. Under Rule 36(c)(3), "[a] party" may cite an unpublished decision of the Supreme Court of Nevada issued on or after January 1, 2016. Although Blenka was issued before that date, we are not a "party" and are not bound by that limitation. Moreover, while Blenka is not binding on this court, "[t]he fact one court has used certain reasoning in an unpublished opinion does not bar courts in this state from using the same reasoning in their decisions." *Osman v. Ford Motor Co.*, 359 Ill. App. 3d 367, 374 (2005).

per an agreement with the municipal prosecutor. *Id.* at \*3. The *Blenka* court further noted that, unlike in *Johnson*, the defendant "did not attempt to resolve only part of the charges against him in the municipal court." *Id.* The present case is distinguishable from *Johnson* for precisely the same reasons.

¶ 39    Notably, the *Blenka* court rejected any suggestion that the defendant was responsible for informing the courts of the parallel prosecutions. *Id.* at \*4. In the court's view, the county and the municipality "were the ones with the resources and power in [the] situation, including the position to know of [the defendant's] concurrent charges," and "it would be an unreasonable burden to expect [the defendant] (a layman) to know that his cases needed to be consolidated, even though attorneys from two governmental entities were proceeding with a course of action that violated the Double Jeopardy Clause." *Id.* The court concluded that the defendant was under no obligation to inform the municipal court of the pending felony charge. *Id.* Courts have also recognized that the concern with allowing a defendant to use the double jeopardy clause as a sword (as occurred in *Johnson*, where the defendant essentially carved up the indictment to his liking) does not apply where the State bears some responsibility for the circumstances implicating the double jeopardy clause. See *State v. Hornbuckle*, No. 14 MA 105, 2015 WL 5691911, at \*7 (Ohio Ct. App., Sept. 23, 2015).[5]

¶ 40    We disagree with the Fourth District's decision in *Staple*—which the State argues was binding on the trial court. The defendant in that case was charged by information with two felony

---

[5]Rule 3.4 of the Ohio Supreme Court Rules for the Reporting of Opinions provides, "All opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published."

counts of aggravated DUI. *Staple*, 2016 IL App (4th) 160061, ¶ 1. He was arraigned on those charges as well as a misdemeanor DUI charge, a lesser included offense that arose out of the same set of circumstances. *Id.* ¶¶ 5, 18. The felony charges were docketed under the same case number, but the misdemeanor charge was docketed under a separate case number. *Id.* ¶ 5. At the defendant's arraignment, the trial court asked the prosecutor whether he wanted to consolidate the felony charges and the misdemeanor charge or proceed on them separately. *Id.* The prosecutor chose the latter course. *Id.* The defendant later pleaded guilty to the misdemeanor charge. *Id.* ¶ 6. The trial court accepted the plea and imposed sentence. *Id.* The defendant then moved to dismiss the felony charges, arguing that further prosecution would subject him to double jeopardy. *Id.* ¶¶ 6-7. The trial court granted the motion. *Id.* ¶ 8. Citing *Johnson*, the *Staple* court reversed. *Id.* ¶¶ 24, 28.

¶ 41    The *Staple* court reasoned that the defendant was never exposed to a conviction on the felony charges and that his guilty plea did not operate as an implied acquittal of those charges. *Id.* ¶ 18. The court further wrote that, because defendant knew that the felony charges were pending, "the protection offered by double jeopardy against 'liv[ing] in a continued state of anxiety and insecurity' for fear the State might pursue a subsequent prosecution is inapplicable." *Id.* (quoting *Green v. United States*, 355 U.S. 184, 187 (1957)). Finally, the court explained that the defendant's guilty plea did not enhance the State's ability "to fine-tune its presentation of the [felony] case or otherwise marshal its evidence and resources." *Id.* The court concluded: "As in *Johnson*, this case does not present any issues related to finality or prosecutorial overreach." *Id.*[6]

_____

[6]The *Staple* court concluded that our decision in *Brener* was distinguishable because that defendant was indicted on felony charges after pleading guilty to misdemeanor charges and there was no indication that he was aware of the felony charges when he entered his plea. *Staple*, 2016 IL App (4th) 160061, ¶ 21. However, the defendant in *Brener* had been charged by information with the same felonies on the day that

¶ 42    To be sure, these considerations played a role in the outcome of *Johnson*. In our view, however, they were subordinate to *Johnson*'s central rationale. *Johnson* teaches that the piecemeal resolution *in a single prosecution* of multiple charges of the "same offense" (as defined in *Blockburger*) does not offend the prohibition against double jeopardy when the *defendant* is the one who prevents the charges from being resolved together. In such cases, the concerns animating the double jeopardy clause—anxiety and uncertainty over the possibility of future prosecution, and a second chance for the prosecution to marshal its resources and fine-tune its case—are not present. However, *Johnson* did not purport to create a freestanding exception to the double jeopardy clause in any case where those concerns are absent. Rather, the general rule remains that a second prosecution following a conviction is prohibited.

¶ 43    We note that in *Brown* the defendant pleaded guilty, so the prosecution arguably did not have a *second* chance to marshal its resources and fine-tune its case. See *Brown*, 432 U.S. at 162. Yet that did not convince the *Brown* Court that the successive prosecution was permissible under double jeopardy principles. *Id.* at 168-69. Furthermore, although defendant's plea in the municipal prosecution here did not afford the State an additional opportunity to fine-tune its case, it conferred a similar, if not greater, benefit because a guilty plea may be substantively used in a subsequent prosecution. See *People v. Williams*, 188 Ill. 2d 365, 369-70 (1999) (" 'It is generally held that a voluntary plea of guilty on a prior trial or hearing, even for another offense, where the plea in effect admits certain facts which are relevant and material on the present trial, is admissible.' " (quoting

---

he was charged with the misdemeanors and was surely aware that he faced prosecution for the felonies. *Brener*, 357 Ill. App. 3d at 870. That awareness was nevertheless insufficient to overcome the bar against further prosecution. *Id.* at 871-72.

- 17 -

23 C.J.S. *Criminal Law* § 883, at 92-93 (1989))). This advantage to the State militates further against the purported exception recognized in *Staple*.

¶ 44 The State argues that the misdemeanor and felony charges in this case had to be brought separately because "[d]efendant could not be charged with the felony form of DUI via a uniform citation and complaint form issued by a police officer." Setting aside the fact that the tickets were also marked with the CF case number and included in the felony court file, the State conflates two issues: (1) whether the charges could be brought in a single charging instrument and (2) whether the charges could be tried in a single proceeding. Although the State contends that the charges were not subject to *compulsory* joinder, it hardly follows that the charges could not have been tried together. Indeed, the indictment in case No. 2024-CF-662 charged misdemeanor DUI (see 625 ILCS 5/11-501(c)(1) (West 2022)), as well as felony DUI (*id.* § 11-501(d)(2)(A)).

¶ 45 Along these lines, the State urges this court to reinstate the dismissed charges and remand for further proceedings. The State asserts that defendant will then have an opportunity to withdraw his plea to the misdemeanor charge, and, if he chooses not to do so and is later found guilty of the felony charge, the misdemeanor and felony convictions would merge. However, it is not the responsibility of this court to clean up the State's messes. The State's request is not appropriate, given that defendant entered his guilty plea in a separate proceeding (over which we have no jurisdiction), pursuant to an agreement with a different prosecutorial office. Indeed, it is by no means clear that either this court or the trial court could effectuate that merger. Moreover, the burden of securing this result would fall on defendant, but "[t]his responsibility should not be placed on the defendant where he has a constitutional right to be free from multiple prosecutions for the same offense." *Hull*, 2020 IL App (3d) 190544, ¶ 13.

¶ 46    The State also relies on *People v. Price*, 369 Ill. App. 3d 395 (2006), to argue that the acceptance of defendant's plea in the misdemeanor proceeding did not foreclose prosecution of the felony charges. However, *Price*, like *Johnson*, involved a single proceeding and, as the *Price* court emphasized, defendants who "subdivided their respective charges on their own and pleaded guilty to only some of the charges," leaving other counts pending, then "argued double jeopardy barred the remaining charges." *Id.* at 403. That is not the case here.

¶ 47    Moreover, the *Johnson* Court's concern about criminal defendants using the double jeopardy clause as a sword, rather than a shield, does not apply when the State is not blameless in creating the situation leading a defendant to invoke the clause. Here, the state's attorney had statutory responsibility for the prosecution of the misdemeanor offenses (625 ILCS 5/16-102(c) (West 2022)) and could have communicated with the Village prosecutor to advise against entering a plea agreement. The State was hardly in the position faced by the prosecution in *Johnson*, which, to no avail, objected to the piecemeal disposition of the charges.[7]

---

[7]We acknowledge authority that the State's failure to object to a partial plea in a *single proceeding* may not foreclose prosecution of other charges. It has been observed:

> "In cases where *** a court accepts a defendant's plea to the lesser charge without objection by the government, *the single prosecution theory of Johnson* supports the conclusion of most courts that the interests protected by the constitutional prohibition against successive prosecutions are not implicated if a judge *** allows the government to continue its prosecution of the greater charge." (Emphasis added.) 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr, Criminal Procedure § 25.1(d) (3d ed. 2007).

We note that the State quoted part of the above passage in its reply brief but omitted the emphasized language. Again, the inquiry turns on whether a defendant seeks to bifurcate his charges to gain advantage.

¶ 48    The State notes that, like the defendant in *Staple* (as here, a layman), defendant here was aware of the separate prosecutions. Although the *Staple* court found it significant that the defendant was aware of the pending felony prosecution when he entered his guilty plea in the separate misdemeanor proceedings, the court offered no meaningful explanation of how that related to the double jeopardy analysis. Rather, the *Staple* court simply quotes *Jeffers* for the wholly inapposite proposition that where a criminal defendant " 'expressly asks for separate trials on *** greater and the lesser offenses, or, in connection with his opposition to trial together, fails to raise the issue that one offense might be a lesser included offense of the other,' " the defendant cannot seek refuge in the double jeopardy clause. *Staple*, 2016 IL App (4th) 160061, ¶ 18 (quoting *Jeffers*, 432 U.S. at 152). The situation in *Jeffers* was not the situation in *Staple* and does not match the facts of this case.

¶ 49    Under these circumstances, we are persuaded by the reasoning of the Court of Appeals of Ohio in *State v. Becker*, 2024-Ohio-5702, 259 N.E.3d 1127, ¶ 34 (Ct. App.):

> "We cannot create a new exception to the constitutional prohibition against double jeopardy simply because at the time the defendant pled guilty to the misdemeanor charge in municipal court he had full knowledge that a felony charge was currently pending in common pleas court, especially where this public information was available to both the city and county prosecutors. Further, the idea that double jeopardy should not be used as a 'sword' is limited to situations where a defendant created the situation that gave him an opportunity to plead guilty to one charge in the hopes to avoid a charge with a greater penalty."

Moreover, "[i]t is not the defendant's job to conduct the prosecution against him, and the defense here had no duty to tell the court or the prosecutor of the indictment already procured by the prosecution itself." (Internal quotation marks omitted.) *Id.* ¶ 36.

¶ 50 Here, the State failed to communicate and coordinate with the Village, despite multiple opportunities to do so over the course of at least eight total court appearances during the 152 days that both the misdemeanor and felony charges were pending before entry of the negotiated plea. The state's statutory authority to prosecute the charge to which defendant pleaded, albeit delegated to the Village, was still the state's responsibility—the state and village constitute a single sovereign. This is not a situation where the defense raced to the courthouse to surreptitiously plead guilty to the lesser charge before the State could pursue the greater charge. The misdemeanor plea was fully negotiated by a Village prosecutor with ample opportunity to have reviewed court files, defendant's driving abstract record, and a police report that likely mentioned that the arresting officer had sought and obtained felony approval from an assistant state's attorney. At the same time, the state's attorney should have been aware of the existence of the misdemeanor charges, as the citations in the felony court file set an initial appearance date in misdemeanor/traffic court, and the traffic offense, forming at least part of the officer's probable cause (no stopping/standing), was never joined or dismissed in the felony case prior to presentment to the grand jury. Moreover, the existence of both cases was a matter of public record, obviously.

¶ 51 It is undisputed that the Village and the State are the same sovereign for double jeopardy purposes. They—not defendant—were the parties that decided what charges to bring and where to bring them. Both should have been aware of the potential double jeopardy issue, and both had ample time and opportunity to address it prior to defendant's plea, whether by dismissing the misdemeanor DUI, consolidating the prosecutions, or objecting to defendant's plea of guilty to the

lesser charge. Having failed to preserve its right to prosecute the greater offense, the risk of an adverse result must fall squarely on the State:

> " 'There can be little sympathy for the State when its subordinate instrumentalities fail to cooperate. A defendant should not lose the constitutional right against double jeopardy simply because he or she outmaneuvered the State and avoided a harsher punishment by properly exercising that constitutional right.' " *Hull*, 2020 IL App (3d) 190544, ¶ 10 (quoting *Brener*, 357 Ill. App. 3d at 872).

To hold otherwise "would be to cure the injustice of the State's failure to adequately represent the interests of its citizens by inflicting the much greater injustice of stripping a defendant of a constitutional right." *Brener*, 357 Ill. App. 3d at 872. Moreover, as we wrote in *Brener*, "that a defendant can avoid a harsher punishment is a basic, common, and acceptable consequence of the prohibition against double jeopardy." *Id.*

¶ 52    We hold that a defendant's negotiated plea to, and conviction of, a lesser-included offense bars subsequent (or continuing) prosecution for the greater offense in a separate proceeding. See 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr, Criminal Procedure § 25.1(d), at 591-92 (3d ed. 2007); see also *Becker*, 2024-Ohio-5702, ¶¶ 33-35; *Fox*, 2014 WL 5243365, at *4; *Witcher*, 737 So. 2d at 586 ("The principle of double jeopardy prohibited the state from continuing to pursue the felony charges in circuit court" where both misdemeanor and felony DUI charges were pending in separate courts at the same time when defendant entered an open plea to the misdemeanor DUI in county court.). To the extent that *Staple* holds otherwise, we decline to follow it.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 55     Affirmed.

***People v. Munoz*, 2026 IL App (2d) 250025**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 24-CF-662; the Hon. John A. Barsanti, Judge, presiding. |
| **Attorneys for Appellant:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Katrina M. Kuhn, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Christopher McCoy, and Kerry Goettsch, of State Appellate Defender's Office, of Elgin, for appellee. |